**Joanne Wood KILEY, Plaintiff–Appellant,**

v.

**AMERICAN SOCIETY FOR the PREVENTION OF the CRUELTY TO ANIMALS, Defendants–Appellees.**

**No. 07–0793–cv.**

United States Court of Appeals, Second Circuit.

Oct. 2, 2008.

Joanne Wood Kiley, New York, NY, appearing pro se.

Michael J. Lebowich, Proskauer Rose, LLP, New York, NY, for Defendants–Appellees.

PRESENT: Hon. RICHARD C. WESLEY, Hon. PETER W. HALL, Hon. JOHN R. GIBSON,[1] Circuit Judges.

## SUMMARY ORDER

Joanne Wood Kiley appeals *pro se* the district court's dismissal of her complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Kiley's employer, the American Society for the Prevention of Cruelty to Animals ("ASPCA"), gave Kiley a two-week unpaid suspension after concluding she had sexually harassed her supervisor. The ASPCA then reinstated Kiley in the same position at a different location. Subsequently, Kiley filed a complaint with the district court alleging discrimination based on sexual orientation, gender stereotyping, and retaliation on the part of the ASPCA. The district court granted a motion by the ASPCA to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Kiley appeals only the dismissal of her sexual orientation and gender stereotyping claims.

Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues.

*Standard of Review*

This Court reviews *de novo* the district court's grant of a motion to dismiss, ac-

---

1. The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

cepting all facts alleged in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir.2007).

*Title VII Claims*

To make out a prima facie case under Title VII, a plaintiff must show: (1) she is a member of a protected class; (2) she is competent to perform her job or performed her job satisfactorily; (3) there was an adverse employment action; and (4) circumstances supporting an inference of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir.2005). Once a plaintiff makes a prima facie Title VII case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the employment decision at issue. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). If the employer satisfies this requirement, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's "proffered reasons were pretextual." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 530, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Dismissal of Sexual Orientation Discrimination Claim*

■ Title VII protects a limited class of persons from discrimination. Protection is limited to individuals who are discriminated on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1), (2). Sexual orientation is not included in the statutory protected class. In *Simonton v. Runyon*, 232 F.3d 33 (2d Cir.2000), this Court upheld a district court's dismissal of a Title VII claim

based on sexual orientation because, "[t]he law is well-settled in this circuit and in all others to have reached the question that [the plaintiff] has no cause of action under Title VII because Title VII does not prohibit harassment or discrimination because of sexual orientation." 232 F.3d at 35. The Court noted that the legislative history was scant on whether sexual orientation should be included in the category of "sex," but the Court concluded, based on numerous bills attempting to extend Title VII protection to sexual orientation, that Congress did not intend to include sexual orientation in Title VII's current form. *Id.*

Based on this Court's interpretation of Title VII in *Simonton*, Kiley may not bring a claim under Title VII for discrimination based on sexual orientation. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217–18 (2d Cir.2005) ("[T]o the extent that [the plaintiff] is alleging discrimination based upon her lesbianism, [the plaintiff] cannot satisfy the first element of a prima facie case under Title VII because the statute does not recognize homosexuals as a protected class.").

*Dismissal of Sex Discrimination Claim Based on Stereotyping*

■ Plaintiffs may bring Title VII claims alleging that an adverse employment decision was due in part to sexual stereotyping by the employer. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251–52, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Dawson*, 398 F.3d at 218. However, a plaintiff may not use a gender stereotyping claim to "bootstrap protection for sexual orientation into Title VII." *Dawson*, 398 F.3d at 218 (quoting *Simonton*, 232 F.3d at 38).

Kiley makes no discernable factual allegation of sexual discrimination in her brief to this Court. Looking beyond that to the record provided by the appellee, however,

it appears Kiley made several factual allegations against her supervisor in earlier documents but failed to connect them to a cognizable Title VII sexual discrimination claim. In her original complaint, she claimed that her supervisor—who filed the complaint against Kiley that led to Kiley's temporary unpaid suspension—barred her from exiting an elevator and told Kiley to "be careful" and "watch out." Appellee's App'x at 148; *see also id.* at 142. She also claimed that ASPCA human resources personnel stated Kiley "was transferred because this action was deemed less awkward for everyone." *Id.* at 149. In addition, in her answer to the ASPCA's motion to dismiss, Kiley noted that she filled out a formal sexual discrimination complaint and checked a box marked "gender/sex [discrimination]," above which she wrote "because I am a Gay woman." *Id.* at 137–38. In her answer to the 12(b)(6) motion, Kiley argued that "[h]er supervisor made certain assumptions about her, assumptions informed by gender stereotypes because she did not conform with the supervisors [sic] ideas of what women should look like or act like and was vilified for not being 'feminine' enough." *Id.* at 137.

Even assuming these facts to be true, Kiley does not in any way link them to a colorable Title VII claim based on gender stereotyping or sex. First, the comment of her supervisor in the elevator, while possibly threatening, does not seem to bear any relationship to sexual discrimination. Second, the reasons given by ASPCA human resource personnel for Kiley's transfer also do not have any apparent connection to her sex or sexual stereotyping, nor does Kiley make that connection. Third, although Kiley makes the conclusory statement that her supervisor made assumptions about her informed by gender stereotypes of what women should look like and act, and claims she was vilified for not being feminine enough, she

does not state how these assumptions or vilification resulted in an adverse employment decision. Fourth, she offers no evidence that her unpaid suspension or transfer was based on sex discrimination or that the ASPCA's reason for suspending and transferring Kiley, as a response to Kiley's sexual harassment of a supervisor, was pretextual. Finally, Kiley's claim, as she stated in her formal complaint to the ASPCA, appears to be based on sexual orientation discrimination. She cannot bootstrap this claim to a sexual stereotyping claim.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.